IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Johnathan B. Witt,                :
          Appellant       :
                           :
         v.                 :
                           :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :  No. 271 C.D. 2025
Bureau of Driver Licensing      :  Submitted: June 16, 2026

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE STELLA M. TSAI, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                         FILED: August 12, 2026

Johnathan B. Witt (Licensee) appeals from the Fayette County Common Pleas Court's (trial court) January 29, 2025 order denying Licensee's appeal from the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing's (DOT) 18-month suspension of Licensee's driving privileges pursuant to Section 1547 of the Vehicle Code.[1]  Essentially, Licensee presents one issue for this Court's review: whether the trial court erred by determining that Licensee refused a chemical blood test.  After review, this Court affirms.

On January 27, 2024, while on patrol, Pennsylvania State Trooper Clayton Duvall (Trooper Duvall) observed Licensee erratically driving his vehicle.

---

[1] 75 Pa.C.S. § 1547.  Section 1547(b) of the Vehicle Code, commonly known as the Implied Consent Law, sets forth the civil penalties for a driver arrested for driving while under the influence of alcohol who refuses to submit to chemical testing.

*See* Reproduced Record (R.R.) at 3.[2]  After Trooper Duvall followed Licensee for approximately one-half of a mile with his patrol car's lights and siren turned on, Licensee pulled his vehicle into a parking lot.  *See* R.R. at 4.  After Licensee exited his vehicle, Trooper Duvall observed that Licensee's eyes were bloodshot and glassy, and that he was stumbling and slurring his speech.  *See id*.  Trooper Duvall requested multiple times for Licensee to step back to the front of Trooper Duvall's patrol car.  *See id*.  When Trooper Duvall attempted to conduct a field sobriety test, Licensee was uncooperative and unable to comply with his instructions.  *See* R.R. at 5.  Trooper Duvall then attempted to administer a breathalyzer test, which Licensee refused.  *See id*.  Trooper Duvall placed Licensee under arrest for driving while under the influence of alcohol (DUI).  *See id*.

Trooper Duvall moved Licensee to the back of his patrol car and read Licensee the implied consent warnings on the DL-26 Form[3] in their entirety.  *See id*. After reading the warnings to Licensee, Trooper Duvall asked Licensee if he would consent to the blood test.  Licensee requested to read the DL-26 Form on his own. *See id*.  Trooper Duvall held the DL-26 Form in front of Licensee and shined his flashlight onto the DL-26 Form so Licensee could read it.  *See id*.  Licensee asked for his handcuffs to be removed so he could hold the DL-26 Form.  *See id*.  Trooper Duvall refused to uncuff Licensee, read the entire DL-26 Form to Licensee a second time, and sought Licensee's assent to the blood test.  *See id*.  Trooper Duvall recalled that Licensee "would not answer when asked to submit to a blood test."  R.R. at 6.

---

[2] The Reproduced Record does not comport with Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173 (requiring that the pagination of reproduced records be in the form of an Arabic number followed by a small "a").  For ease, this Court will utilize the method of pagination used in the Reproduced Record.

[3] DOT promulgated the DL-26 Form, which sets forth the prescribed language of the warning law enforcement is to give motorists arrested for DUI that details the penalties for refusing chemical tests.  Law enforcement uses the DL-26 Form to comply with the requirements of the Implied Consent Law during DUI arrests.

2

Licensee then responded: "[W]hat I am saying is . . . ." R.R. at 68; *see also* Trooper Duvall's motor vehicle recording (MVR).[4] License never finished his sentence.[5] Trooper Duvall subsequently deemed Licensee noncompliant and his remark to be a refusal. *See id*.

On February 9, 2024, DOT mailed Licensee an Official Notice of Suspension of Driving Privilege (Notice), informing him that DOT will suspend his driving privileges for 18 months, effective March 15, 2024, because Licensee had refused a chemical test on January 27, 2024. *See* R.R. at 25-26. On February 20, 2024, Licensee timely appealed from the Notice to the trial court. *See* R.R. at 45. On January 14, 2025, the trial court conducted a hearing. On January 29, 2025, the trial court denied Licensee's appeal and reinstated Licensee's suspension. *See* R.R. at 45. Licensee appealed to this Court.[6]

Licensee argues that the trial court erred by holding: (1) Licensee's words and actions in response to Trooper Duvall's requests to submit to a blood test constituted a refusal pursuant to Section 1547(b)(1) of the Vehicle Code; and (2) Trooper Duvall was not required to provide Licensee with a blood test.

Initially,

> [t]o support the suspension of a licensee's operating privilege under the Implied Consent Law, []DOT has the burden to prove that the licensee[:] (1) was arrested for DUI by a police officer who had reasonable grounds to believe that the licensee was operating or in actual physical control of the movement of a vehicle while under the influence of alcohol or a controlled substance; (2) the

---

[4] The trial court admitted the MVR into evidence. *See* R.R. at 17. This Court's review of the MVR confirms Trooper Duvall's testimony and supports the trial court's findings of fact.

[5] *See* MVR.

[6] This Court's "review is limited to determining whether [the trial court] committed an error of law, whether [the trial court] abused its discretion, or whether the findings of fact are supported by substantial evidence." *Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1035 n.6 (Pa. Cmwlth. 2018).

> licensee was asked to submit to a chemical test; (3) the licensee refused to do so; and (4) the licensee specifically was warned that a refusal would result in the suspension of his operating privilege.

*Curry v. Dep't of Transp., Bureau of Driver Licensing*, 318 A.3d 1012, 1019 (Pa. Cmwlth. 2024) (quotation marks omitted).

"[W]hether a licensee's conduct constitutes a refusal to submit to chemical testing is a question of law fully reviewable by this Court." *Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 440 (Pa. Cmwlth. 2014). Significantly,

> "[t]he question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, . . . 130 A.3d 738, 748 (Pa. 2015); *see also Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018). The question of refusal by a licensee to consent to chemical testing "turn[s] on a consideration of whether the [licensee's] overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing." *Nardone*, 130 A.3d at 749.
>
> Pennsylvania courts have long and consistently held that **anything less than an unqualified**, **unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto**. *See Dep't of Transp., Bureau of Driver Licensing v. Renwick*, . . . 669 A.2d 934, 939 (Pa. 1996); *see also McKenna v. Dep't of Transp., Bureau of Driver Licensing*, 72 A.3d 294 (Pa. Cmwlth. 2013) (licensee's questioning police regarding consequences of refusal and refusing to sign consent form constituted refusal to consent to chemical testing); *Hudson v. Dep't of Transp., Bureau of Driver Licensing*, 830 A.2d 594 (Pa. Cmwlth. 2003) (repeated interruption and aggressive behavior while being read warnings constituted a refusal to consent to chemical testing). Further, **an explicit refusal is not required to find a licensee refused to consent to**

**chemical testing**; "a licensee's conduct may constitute a refusal." *Park*, 178 A.3d at 281; *see also Walkden* . . . (a general unwillingness to submit to testing demonstrated by a licensee's overall conduct demonstrated a refusal to consent to chemical testing).

*Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 496-97 (Pa. Cmwlth. 2018) (emphasis added).

Moreover, "a meaningful opportunity to comply entails an explicit request to submit to testing made *after* the implied consent warnings are read." *Parker v. Dep't of Transp., Bureau of Driver Licensing*, 322 A.3d 996, 1000 (Pa. Cmwlth. 2024). However, "[o]fficers are not required to 'spend effort either cajoling the licensee or spend time waiting to see if the licensee will ultimately change his mind.'" *Walkden*, 103 A.3d at 440 (quoting *Broadbelt v. Dep't of Transp., Bureau of Driver Licensing*, 903 A.2d 636, 641 n. 7 (Pa. Cmwlth. 2006)). In addition, "[i]t is well settled that the trial court's credibility determinations in a license suspension appeal will not be second-guessed on appeal. Determinations as to the credibility of witnesses and the weight assigned to the evidence are matters solely within the province of the trial court as fact-finder." *Park*, 178 A.3d at 284 (citation omitted).

Here, Trooper Duvall testified that he not only read the implied consent warnings to Licensee twice, but he gave Licensee the opportunity to read the DL-26 Form on his own. *See* R.R. at 5. Trooper Duvall then expressly asked Licensee if he consented to the blood test. *See* R.R. at 6. Further, after Trooper Duvall read the warnings to Licensee the second time and asked if he consented to the test, Licensee merely stated: "[W]hat I am saying is[,]" and never finished his sentence. R.R. at 68, *see also* MVR. Therefore, despite that Trooper Duvall explicitly asked Licensee if he consented to a blood test and provided Licensee with multiple opportunities to do so, Licensee failed to provide "an unqualified, unequivocal assent to submit to chemical testing." *Renwick*, 669 A.2d at 939. Licensee's actions, statements, and

failure to provide unequivocal assent constituted a refusal to consent to a chemical blood test. Accordingly, the trial court did not err by concluding that Licensee's conduct constituted a refusal.

For all the above reasons, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Johnathan B. Witt,                :
           Appellant             :
                                :
           v.                   :
                                :
Commonwealth of Pennsylvania,    :
Department of Transportation,       :    No. 271 C.D. 2025
Bureau of Driver Licensing         :

O R D E R

AND NOW, this 12th day of August, 2026, the Fayette County Common Pleas Court's January 29, 2025 order is affirmed.

_____
ANNE E. COVEY, Judge